## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

Allan Novitski,      :
          : Civil Action No. 1:14-CV-2260
          :
     Plaintiff  :   (Chief Judge Conner)
          :    (Schwab, M.J.)
  v.        :
          :
Carolyn W. Colvin,     :
          :
     Defendant :
          :

## <u>REPORT AND RECOMMENDATION</u>

### I. INTRODUCTION

Allan Novitski (Plaintiff) filed applications for benefits under Titles II and XVI of the Social Security Act alleging that he became totally disabled on February 28, 2007, due to the impairments of hepatitis C and depression. After his claim was denied at each level of the administrative review process, he initiated the instant action by filing a complaint in this District Court on November 25, 2014. *Doc. 1.* In his complaint, Plaintiff alleges that the Commissioner's final decision denying his claims for benefits is not supported by substantial evidence, and requests that this Court reverse the Commissioner's decision and enter an order awarding Plaintiff the benefits he believes he is entitled to, or in the alternative, remand this matter with instructions to conduct a new administrative hearing. *Id.* On February 9, 2015, the Commissioner filed her answer, in which she asserts that

the final decision denying Plaintiff's claims is supported by substantial evidence. *Doc. 9.* Together with her answer, the Commissioner filed a copy of the administrative record, which she later supplemented.[1] *Admin Tr. 10, 11, 12*.

This action is brought under 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3) and referred to the undersigned Magistrate Judge for the preparation of a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. It has been fully briefed by the parties, *Docs. 17, 18*, and is ripe for resolution.

It is recommended that the Commissioner's final decision denying Plaintiff's claims be **AFFIRMED**, and Plaintiff's request for the award of benefits or a new administrative hearing be **DENIED**.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a fifty-four year old former kitchen worker and construction worker. He attained his GED in 1982. *Admin Tr. 218*. He received a certificate

---

[1] The first administrative transcript submitted by the Commissioner did not include a transcript of Plaintiff's administrative hearings. *Doc. 10.* The transcript listed in the table of contends was removed because it related to a claim by another individual. *Doc. 10 pp. 46-114.* The second administrative transcript submitted by the Commissioner is identical to the first transcript, except that it includes an unredacted copy of the transcript of the administrative hearing that was excluded from her first submission. *See Doc. 11 pp. 46-*114. We have not considered this hearing transcript as it does not relate to Plaintiff's claim. The Commissioner's third submission contains the transcripts from Plaintiff's administrative hearing, and supplemental hearing. *Doc. 12*.

registered through the department of labor for specialized training to work as a cook in 2003, but testified that he cannot work in the food service industry because he has been diagnosed with hepatitis C. *Admin Tr. 281, 575-76.* Plaintiff reported that his hepatitis C did not respond to treatment. *Amin Tr. 578.* Despite his diagnosis, Plaintiff reported that he continues to use alcohol, and consumes up to four alcoholic beverages "a couple times per week." *Admin Tr. 530.*

On March 18, 2011, Plaintiff filed Title II and XVI applications for benefits under the Social Security Act. Plaintiff reported that he last worked on February 28, 2007, and that he stopped working on that date because he had to return to prison.[2] *Admin Tr. 217.* He also asserts that as of the same date he became unable to work due to the impairments of hepatitis C and depression. *Id.*

Plaintiff testified that he lives in an apartment located in his sister's basement. *Admin Tr. 579.* He insisted that he does not do any household chores, but admitted he "sometimes" takes out the garbage for his sister and is responsible for keeping his apartment clean. *Admin Tr. 580.* During a typical day, Plaintiff reads the newspaper, and sometimes visits a neighbor, who is Plaintiff's only friend. *Admin Tr. 581.* Plaintiff reported that he and his friend counsel one-another about their problems. *Id.* His friend also cooks meals for him. *Id.* Plaintiff is, however, capable of preparing his own simple meals. *Admin Tr. 225.*

---

[2] Plaintiff testified that he worked three to four hours per day as a prep-cook while he was incarcerated. *Admin Tr. 582.*

Plaintiff alleges that he prefers to have as little social interaction as possible, and goes to great lengths to avoid social situations. Plaintiff reports that he only socializes with his friend. *Admin Tr.587.* He explained that he visits his friend instead of going to see a mental health professional because he does not want to go out in public. *Id.* Although Plaintiff shops in stores, he reported that does so only at night to avoid crowds. *Admin Tr. 589-*90. Plaintiff reported that he was fired from that position at McDonalds in 2007 because he had difficulty getting along with a coworker. *Admin Tr. 229, 552*.

Despite his reports, his treating sources consistently note that Plaintiff presented in a calm and cooperative manner. *Admin Tr. 289* (nontreating Dr. Scott Prince noting that Plaintiff displayed cooperation during encounter); *Admin Tr. 295* (nontreating psychologist Stephen Timchack noting that Plaintiff was calm, cooperative, polite, and respectful); *Admin Tr. 328-30* (SCI-Dallas counselor noting cooperative behavior); *Admin Tr. 537, 539, 541, 544* (Community Counseling Service records noting that Plaintiff presented with calm and cooperative behavior).

Plaintiff spent approximately thirteen years incarcerated for burglary, *Admin Tr. 294*, but Plaintiff does not remember his exact periods of incarceration because he was "paroled a couple times." *Admin Tr. 577.* While he was incarcerated he reported that he was once placed in the restricted housing unit (RHU) because he

assaulted another inmate. *Admin Tr.587-88.* He also reported that he was placed in psychiatric observation on at least one occasion. *Admin Tr. 295.* Records from SCI-Dallas reflect that he was monitored for two days in September 2009 because he was believed to be a threat to others and exhibited uncooperative behavior; it was noted that Plaintiff smelled of alcohol. *Admin Tr. 451-52, 454.*

Although Plaintiff alleges that his depression and anxiety are disabling, he has sought almost no treatment for these conditions since he was released from prison in 2011. At his first administrative hearing, he reported that he did not take any anti-depressant medications and was not seeing a psychiatrist, psychologist, counselor, or therapist. *Admin Tr. 582.* Plaintiff explained that he had experienced the extreme side-effects of jaundice and restless leg syndrome when he was previously treated with anti-depressants in 2009 and 2010. *Admin Tr. 578-79.* His records from SCI-Dallas do not note the presence of any medication side-effects when Plaintiff elected to discontinue Paxil in 2010. Plaintiff also reported that he received counseling while incarcerated, but did not think that it helped him. *Admin Tr. 586.* One month after his first hearing, Plaintiff did begin seeing a counselor and psychiatrist at Community Counseling Services (CCS).

Plaintiff's claims were initially denied by the Social Security Administration on September 7, 2011. Thereafter, Plaintiff filed a written request for an administrative hearing on October 5, 2011. His request was granted, and on

November 14, 2012, Plaintiff, assisted by counsel, appeared and testified during an administrative hearing held before Administrative Law Judge (ALJ) Jerard W. Langan. Before the ALJ issued his decision in this case, a supplemental hearing was held on January 24, 2013, to take vocational testimony from expert Michele C. Giorgio (VE). Plaintiff was present, and represented by counsel at the supplemental hearing as well.

On March 1, 2013, the ALJ issued a written decision denying Plaintiff's claims. Plaintiff sought review of the ALJ's denied by the Appeals Council. His request for review was denied on October 2, 2014.

## III.  LEGAL STANDARD

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). To

6

satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this framework, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity (RFC). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also*

20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.  42 U.S.C. §423(d)(5); 42 U.S.C. §1382c(a)(3)(H)(i);  20 C.F.R. §§404.1512, 416.912; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

Once a final decision is issued by the Commissioner, and that decision is appealed to this Court, our review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by substantial evidence in the record, as it was developed before that decision maker.  *See* 42 U.S.C. § 405(g)(incorporated by 42 U.S.C. §1383(c)(3)); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012).  Substantial evidence

"does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512

F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## IV. DISCUSSION

### A. THE ALJ'S DECISION DENYING PLAINTIFF'S CLAIMS

In his written decision denying Plaintiff's claims, the ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through June 30, 2009. *Admin Tr. 23*. Then, after evaluating Plaintiff's claim at each step of the five-step sequential evaluation process, the ALJ ultimately concluded that Plaintiff was not under a disability as defined by the Social Security Act at any time between February 28, 2007, and March 1, 2013.

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 28, 2007, and March 1, 2013. *Admin Tr. 28.* At step two the ALJ found that Plaintiff had the medically determinable severe impairments of hepatitis C, depression, attention deficit hyperactivity disorder (ADHD), chronic obstructive pulmonary disease (COPD), and alcohol abuse. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment of

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Admin Tr. 23-25*.

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. In doing so, the ALJ was required to consider all symptoms alleged and assess whether, and the extent to which, the alleged symptoms can reasonably be accepted as credible based on the requirements of 20 C.F.R. §§404.1529, 416.929 and SSRs 96-4p, 96-7p. The ALJ was also required to consider the opinion evidence of record in accordance with 20 C.F.R. §§404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. Based on his consideration of this evidence, the ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b) except that:

> he must avoid concentrated exposure to unprotected heights in[sic] moving machinery, and can never climb ropes, ladders or scaffolds. He can frequently climb ramps and steers[sic]. He must avoid concentrated exposure to environmental irritants, temperature extremes and humidity. He also must avoid occupations in the food and healthcare industries. The claimant is able to understand, remember and carry out simple instructions and make simple work-related decisions.

*Admin Tr. 25*.

At step four, the ALJ's findings were informed by the VE's hearing testimony. The VE testified that an individual who was unable to climb, and was limited to "simple instructions" and "simple work-related decisions" could not engage in Plaintiff's past relevant work as a Drywall Construction Worker,

because that position is "skilled"[3] and requires some climbing. *Admin Tr. 555.* Relying on the VE's assessment, the ALJ found that Plaintiff was unable to perform his past relevant work. *Admin Tr. 29.*

The ALJ's findings at step five were also informed by the VE's testimony. The VE testified that, based on the ALJ's findings of fact with respect to Plaintiff's age, education, work experience, and the above RFC, Plaintiff could engage in the representative occupations of Packager (DOT #529.685-282, Can-Filling-and-Closing Machine Tender), Production Laborer (DOT #749.587-010, Racker), and Hand Packager (DOT #920.687-034, Bandoleer Packer). The VE's testimony reveals that, collectively, these occupations represent approximately 33,810 jobs in the state economy, and 719,495 jobs in the national economy. *Admin Tr. 556.* Based on this information, the ALJ found that Plaintiff retained the capacity to engage in other work that exists in significant numbers in the national economy.

---

[3] Pursuant to 20 C.F.R. §§404.1568(c), 416.968(c), skilled work requires:

> qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity.

*Admin Tr. 29-30.* As such, he concluded that Plaintiff did not meet the statutory definition of disability under the Social Security Act during the relevant period. *Id.*

### B. THE ALJ'S EVALUATION OF THE MEDICAL OPINION EVIDENCE OF RECORD IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

The Social Security regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§404.1527, 416.1527. The Social Security regulations classify all acceptable medical sources as treating sources, nontreating sources, or nonexamining sources based on the nature of their relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. A treating source is an acceptable medical source who provided the claimant with treatment or evaluation during the course of an ongoing treatment relationship. *Id.* A nontreating source is an acceptable medical source who has examined the claimant, but did not have an ongoing treatment relationship. *Id.* A nonexamining source is an acceptable medical source who provided a medical opinion without examining the claimant. *Id.*

In general, more weight will be accorded to a source who has actually examined the claimant, than one who has not. 20 C.F.R. §§404.1527, 416.927. Under certain circumstances, however, the opinion of a nonexamining source may

be entitled to more weight than a treating or nontreating source. SSR 96-6p, 1996 WL 374180 at *3 (Jul. 2, 1996)("For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source s[sic] medical opinion if the … consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.").

Where no medical opinion is entitled to controlling weight under the Social Security regulations, the weight of all non-controlling opinions by treating sources, nontreating sources, and nonexamining sources is evaluated based on several factors. Pursuant to 20 C.F.R. §§ 404.1527(c) and 416.927(c) non-controlling medical opinions must be weight based on: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

In *Morales*, the Court of Appeals for the Third Circuit set forth the standard for weighing opinions by treating, nontreating, and nonexamining physicians, stating that:

> Where...the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer,* 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno[v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)]. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent[ v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)].

225 F.3d 310, 317-318 (3d Cir. 2000).

The record in this case contains medical opinions issued by the following sources: nontreating source Dr. Scott Prince, D.O., who opined that Plaintiff had no physical limitations, *Admin Tr. 287*; nontreating psychologist Dr. Stephen Timchack, who opined that Plaintiff suffered from several marked psychiatric limitations, *Admin Tr. 290-91*; nonexamining source Dr. Anne Zaydon, M.D., who opined that Plaintiff was capable of engaging in medium work, *Admin Tr. 131*-32; nonexamining psychologist Dr. John Rohar, who opined that Plaintiff had no more than moderate psychiatric limitations, *Admin Tr.* 129-30; and, nonexamining psychologist Grant Croyle, who completed a mental RFC assessment in which he

opined that Plaintiff was capable of performing simple, routine, work, *Admin Tr. 132-33*. The record also includes two employability assessment forms completed by treating sources Dr. Joseph Radzwilka and Dr. Lewis Druffner for the Pennsylvania Department of Public Welfare. *Admin Tr. 394-95, 486-88*.

Plaintiff disputes the ALJ's evaluation of two of the competing psychological assessments. He asserts that the ALJ failed to properly explain his rationale for discounting the medical source statement by Dr. Timchack, and that the ALJ failed to support his decision to accord "great" weight to Dr. Rohar's psychiatric review technique form (PRTF).

### 1. THE ALJ SUFFICIENTLY EXPLAINED HIS DECISION TO DISCOUNT DR. TIMCHACK'S REPORT AND MEDICAL SOURCE STATEMENT.

Dr. Timchack examined Plaintiff on August 16, 2011. Plaintiff arrived on time for his scheduled appointment and was appropriately dressed, but his grooming and hygiene were "marginally attended," and he appeared to be poorly rested and poorly nourished. *Admin Tr. 292, 294.*

During his appointment Plaintiff exhibited behavior that was calm, cooperative, polite and respectful, but exhibited "fleeting" eye contact secondary to significant anxiety, was frequently tearful, and appeared to tremble at different points of the interview. *Admin Tr. 295.*

After engaging in several exercises to assess Plaintiff's social judgment, Dr. Timchack noted that Plaintiff had adequately developed test and social judgment. *Admin Tr.* 296. These exercises also revealed evidence of poor insight and a "marginally" developed fund of knowledge. *Id.* Plaintiff exhibited an adequately developed language repertoire, but there was clear evidence to suggest word-finding difficulties and his voice trembled with anxiety. *Admin Tr. 295.* Dr. Timchack also found evidence of diminished ability to maintain attention and concentration. *Admin Tr. 296.* Plaintiff's recent and remote memory was intact. *Admin Tr. 295.*

Plaintiff exhibited a dysphoric and anxious mood with congruent affect throughout the examination. *Id.* Dr. Timchack noted that there was evidence to suggest the presence of psychomotor agitation, but noted no evidence to suggest the presence of any other unusual behaviors, mannerisms, or body posturing. *Id.* Plaintiff expressly denied any perceptual disturbances, but did report suspicion and paranoia. *Id.*

Based on his observations, Dr. Timchack reported the diagnostic impression of generalized anxiety disorder and major depressive disorder (recurrent, severe, without psychotic features). He also noted the "rule out" diagnoses of panic

disorder with agoraphobia and posttraumatic stress disorder (PTSD). Dr. Timchack assessed a global assessment of functioning (GAF) score of 48.[4]

In his check-box medical source statement, Dr. Timchack opined that Plaintiff had marked restrictions to his ability to perform the following work-related mental activities: make judgments on simple work-related decisions; interact appropriately with the public; respond appropriately to pressures in a usual work setting; and, respond appropriately to changes in a routine work setting. *Admin Tr. 290-91.* Dr. Timchack opined that Plaintiff had moderate restrictions to his ability to perform the following work-related mental activities: carry out detailed instructions; interact appropriately with supervisors; and interact appropriately with co-workers. *Id.* Dr. Timchack opined that Plaintiff had slight or no limitation in all other areas assessed.

---

[4] A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred. *See Diagnostic and Statistical Manual of Mental Disorders*, 32-34(4th ed. text rev. 2000) (hereinafter "DSM-IV"). GAF scores are considered to be medical opinion evidence, and must be weighed based on the standards outlined in 20 C.F.R. §§404.1527 and 416.927. A GAF score between 41 and 50 indicates serious symptoms *or* any serious impairment in social, occupational, or school functioning. DSM-IV at 34.

GAF scores do not have a direct correlation to the severity requirements of the Social Security mental disorder listings. *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 F.R. 50746-01, 50764-65 (Aug. 21, 2001); *see e.g. Gilroy v. Astrue*, 351 F.App'x 714, 715 (3d Cir. 2009)(noting that a GAF score of 45, if credited, would not require a finding of disability).

In his written decision, the ALJ explained his decision to accord "little" weight to Dr. Timchack's narrative report and medical source statement as follows: "[t]he findings and conclusions of the DDS consultative examiner in Exhibit 4F are given little weight as they are not consistent with the SCI or CCS records." *Admin Tr. 28.*

Plaintiff contends that the ALJ's explanation of his decision to discount Dr. Timchack's report is insufficient to permit judicial review, therefore is not supported by substantial evidence. In support of his position, Plaintiff asserts that there is no obvious inconsistency between Dr. Timchack's report and the SCI-Dallas records, and that it is obvious that the ALJ did not thoroughly consider the SCI-Dallas records or the CCS records because he did not engage in any detailed assessment of the GAF scores contained therein.

In response, the Commissioner suggests that there is an obvious inconsistency between the treatment history Plaintiff described to Dr. Timchack and Plaintiff's actual treatment history as outlined in the SCI-Dallas records, and that the ALJ's failure to discuss all of the GAF scores is at most harmless error.[5] The Commissioner also asserts that the mental status examinations in the CSS

_____

[5] The parties appear to be in agreement that the ALJ's failure to discuss all of the GAF scores is harmless in this case. Plaintiff concedes that the GAF scores at issue are not proof of disability. Instead Plaintiff asserts that the ALJ's failure to discuss these scores demonstrates a more general failure by the ALJ – that he did not adequately review and analyze the records. *See Doc. 17 p. 9.*

records reflect that Plaintiff's symptoms were less severe than Dr. Timchack found in his report.

It is well-established under the regulations that an ALJ must consider *all* relevant evidence when determining an individual's RFC at step four. *See* 20 C.F.R. §§404.1527, 404.1545(a), 416.927, 416.945(a). This evidence includes medical opinions. Moreover, the ALJ's findings on the issue of RFC "must be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). In *Cotter*, the Third Circuit explained that:

> [i]n our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for that decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. §405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Id.* at 705 (*quoting Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)). Although the ALJ is not obligated to employ any particular "magic words," *Sassone v. Comm'r of Soc. Sec.*, 165 F.App'x 954, 959 (3d Cir. 2006), or adhere to a particular format when explaining his or her rationale for crediting or discounting evidence, *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), the ALJ must ensure "that there is sufficient development of the record and explanation of

findings to permit meaningful judicial review." *Id.* (*citing Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 120 (3d Cir. 2000)).

Thus, to resolve this dispute, we must determine whether there is an obvious inconsistency between the SCI Dallas and CSS records such that we can reasonably discern the basis for the ALJ's decision to discount Dr. Timchack's report and medical source statement. We begin our assessment by thoroughly examining the contents of the SCI-Dallas and CSS records.[6]

The records from SCI-Dallas span the period from July 2005 through November 2011. *Admin Tr. 304-86, 396-485.* These records reveal that Plaintiff did complain of periods of anxiety and depression while he was incarcerated. During the relevant period, his symptoms were treated with the antidepressant drug, Paxil. However, in May 2010, Plaintiff chose to discontinue Paxil; the records do not note the presence of any medication side-effects that may have contributed to this decision. Shortly thereafter Plaintiff was discharged from psychiatric treatment because he had no presenting problems and used no medications. *Admin Tr. 331.* The records from SCI-Dallas reflect that Plaintiff's insight and judgment were "fair" and "intact." *Admin Tr. 317, 318.* Moreover, on November 15, 2011, it was noted that Plaintiff's mental status was normal. *Admin Tr. 307.*

---

[6] The ALJ did provide a brief summary of the records from SCI-Dallas and CCS in his decision. *Admin Tr. 25, 26-27.*

Plaintiff was referred to CSS by Dr. Timchack in August 2011. During his first administrative hearing, Plaintiff reported that he did not follow through with Dr. Timchack's recommendation because he does not like to go out in public. Plaintiff did, however, present for examination on December 24, 2012 – one month after his first administrative hearing. He attended two additional appointments in January 2013. Similar to the SCI-Dallas records, the records from CSS reveal that Plaintiff refused any medication despite the clinician's recommendation. On mental status examination during all appointments Plaintiff was noted to be calm, cooperative, and fully oriented, exhibited no tremors, and exhibited coherent speech, linear thoughts, intact memory, average intellectual functioning, and intact insight. He denied suicidal or homicidal ideation, and auditory or visual hallucinations. He was noted to have "limited" or "poor" judgment during all three sessions, and a "sad" mood and "constricted" affect during two sessions. His mood was "okay" during his third session.

As an initial matter, we note that Dr. Timchack did not have access to either the SCI-Dallas or CSS records during his examination. It appears that these records were not submitted until *after* he issued his report and medical source statement. Therefore, his knowledge of Plaintiff's past psychiatric treatment was limited to Plaintiff's reports, which are obviously inconsistent with the SCI-Dallas treatment notes. In his report, Dr. Timchack noted that "[Plaintiff] indicates that

while in prison, he medicated on antidepressants as well as antipsychotics. He recalls medicating on amitriptyline, Zoloft, Prozac, and Seroquel." *Admin Tr. 293*. This characterization of his past psychiatric treatment implied greater symptom severity than Plaintiff's records from SCI-Dallas, which reflect that the only medication prescribed during the relevant period was Paxil, and that Plaintiff took Paxil for only seven months during the relevant period before he requested that his medication be discontinued because his symptoms had resolved.[7] The inconsistencies between Plaintiff's report and his actual treatment history undermine the foundation of Dr. Timchack's opinion and make it less reliable than it would have been had it been based on a more accurate characterization of Plaintiff's treatment history.

The CSS records, which post-date Dr. Timchack's report, are also inconsistent with Dr. Timchack's observations. Plaintiff appeared to be experiencing considerable anxiety during his appointment with Dr. Timchack. He was trembling, tearful, and had difficulty maintaining eye contact. In contrast, on December 24, 2012, Plaintiff exhibited controlled and cooperative behavior, and

---

[7] The Records from SCI-Dallas reveal that Plaintiff was taking Prozac and Welbutrin in July 2005, in May 2006 it was noted that Plaintiff was doing well *without* medication, *Admin Tr. 425,* he was on no medication in March 2007. *Admin Tr. 413*. On November 6, 2009, while assigned to the restricted housing unit (RHU), Plaintiff was started on Paxil for his complaints of depression and anxiety. After he was moved back into the general prison population in May 2010 Plaintiff's prescription was discontinued per his request.

was not noted to be tearful. *Admin Tr. 534.* During two more therapy sessions, he was calm and cooperative, did not exhibit any tremors and, once again, declined the clinician's offered medications. *Admin Tr. 539-544.*

A "comprehensive explanation" need not always accompany a decision to discount a piece of probative evidence, since "a sentence of a short paragraph would probably suffice" in most instances. *Cotter v. Harris,* 650 F.2d 481, 482 (3d Cir. 1981). We find that this is one such instance. Accordingly, because the SCI-Dallas records clearly conflict with the psychiatric treatment history Plaintiff recounted for Dr. Timchack, and because Plaintiff's subsequent examination reports clearly reflect considerably less severe symptoms on mental status examination than observed by Dr. Timchack, we find that the ALJ's decision to discount Dr. Timchack's medical source statement is adequately explained and is supported by substantial evidence.

### 2. THE ALJ ADEQUATELY EXPLAINED HIS DECISION TO ACCORD "GREAT" WEIGHT TO THE MEDICAL OPINION OF NON-EXAMINING PSYCHOLOGIST, DR. ROHAR.

Dr. Rohar completed a Psychiatric Review Technique Form (PRTF) on September 7, 2011. Pursuant to SSR 96-8p,

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories defined in the "paragraph B" and "paragraph C" criteria and are not an RFC assessment but are used to rate the severity of mental impairment(s) at

steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used as steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

1996 WL 374184 at *4 (Jul. 2, 1996).

In his PRTF, Dr. Rohar assessed that Plaintiff had medically determinable impairments that did not precisely satisfy the diagnostic criteria of paragraph A of Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders). Then, in evaluating the paragraph B criteria of listings 12.04 and 12.06, Dr. Rohar assessed that Plaintiff had a moderate restriction of activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and no repeated episodes of decompensation. *Admin Tr. 129-30.* He also found that the evidence did not establish the presence of paragraph C criteria. *Id.*

In his written decision, the ALJ found that "[t]he Psychiatric Review Technique form completed in Exhibit 4A for the DDS is given great weight," *Admin Tr. 28*, but did not provide any additional explanation. On its own, we agree that the above-quoted explanation would not be sufficient to permit any meaningful judicial review. Although we are not permitted to review evidence in order to establish an affirmative rationale for affirming an ALJ's decision, we are not required "to read the ALJ's opinion in a vacuum." *Knox v. Astrue*, No. 09-

25

1075, 2010 WL 1212561 at *7 (W.D.Pa. Mar. 26, 2010). The standard of review still requires us to review the record, or in this case the ALJ's decision, as a whole to determine whether a decision is supported by substantial evidence.

In this case, the ALJ made findings identical to those in Dr. Rohar's PRTF at step three of the sequential evaluation process, and cited evidence to support those findings. The ALJ explained that Plaintiff had only "moderate" restriction of activities of living because:

> The claimant lives in a basement apartment at his sister's house. He manages his own care, can cook simple meals in her kitchen, cleans his area and takes out the trash for her. He prefers not to be around a lot of people. He does not have a Pennsylvania driver's license. He can do his own food shopping.

*Admin Tr. 24*. The ALJ explained that he found that Plaintiff had only "moderate" difficulties in maintaining social functioning because:

> The claimant has been incarcerated for a significant amount of his adult life and he prefers not to be around crowds. He has testified that he has a friend, and he talks with the friend and watches television. He has problems getting along with other people. He has been diagnosed with ADHD and sometimes has trouble completing things.

*Id.* (*internal citations omitted*). The ALJ explained that Plaintiff had only "moderate" difficulties maintaining concentration, persistence or pace because:

> The claimant is on Adderall prescribed by his primary care physician and reports that it has helped his focus. He has testified to being depressed and not motivated to do much. He does continue to drink alcoholic beverages despite being told to stop because of his hepatitis C. He is able to understand, remember, and carry out instructions.

*Id.* The ALJ explained that he found that Plaintiff had no episodes of decompensation of extended duration because he "has not been hospitalized for any mental issues since his alleged onset date." *Admin Tr. 24*.

The above passages reflect that the ALJ found Plaintiff's credible testimony, his function report, and records from Plaintiff's primary care physician to be consistent with his step three findings, which are in turn consistent with Dr. Rohar's PRTF. Plaintiff does not dispute that the ALJ's findings at step three are supported by substantial evidence.

It is well-established that ALJ is not obligated to adhere to a particular format when explaining his or her rationale for crediting or discounting evidence. *Jones*, 364 F.3d at 505. Furthermore, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Despite the fact that the ALJ's step three analysis and his findings with respect to Dr. Rohar's PRTF are separated by several pages, we review for substance over form, and a simple deficiency in opinion-writing technique does not require us to set aside an administrative decision when it clearly has no bearing on the outcome of this case. Accordingly, we find that the ALJ's explanation for his findings at step three, which are entirely consistent with Dr. Rohar's PRTF, can be reasonably construed to apply equally to

his decision to accord great weight to Dr. Rohar's PRTF, and that the ALJ's decision to accord "great" weight to Dr. Rohar's PRTF is supported by substantial evidence.

## V.  RECOMMENDATION

Because we have found that the Commissioner's final decision denying Plaintiff's claim is supported by substantial evidence, it is recommended that the final decision of the Commissioner of Social Security be **AFFIRMED**, and that Plaintiff's requests for the award of benefits or a new administrative hearing be **DENIED**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Respectfully Submitted October 5, 2015.

<u>**S/Susan E.  Schwab**</u>
Susan E. Schwab
United States Magistrate Judge